James J. Baird v. The Grand Rapids School Furniture Company.

*Sale—Contract—Retention of title as security—Breach of warranty —Replevin.*

1. A furniture company contracted to seat an opera house with chairs for a specified sum, to be settled for by the note of the owner, due in 90 days after the completion of the contract, and was to retain as security the title to the chairs until paid for. The contract described the chairs by the color of the wood and castings, etc., but contained no further specifications as to quality, but provided that if the company should, through negligence or error, make and ship any chair not in conformity with the seating plans and specifications, the vendee might retain in settlement, from the purchase price of the chairs, double the cost of any chairs so wrongly made or mechanically constructed, until such mistake should be made good, when the sum so retained should be paid, but that such mistake or error should not otherwise affect or delay settlement in accordance with the contract. The chairs were furnished, and the vendee refused to settle for them on the ground that they did not conform to an oral warranty as to quality. The company took possession of the chairs, and they were replevied by the vendee, who claimed that he had the right to retain possession until the warranty should be made good. And it is held:

   *a*—That all that was contemplated by the provision was to guard against errors in measurement, or negligence in shipping a chair which could not be placed in the opera house in conformity with the plans and specifications, and that the vendee was not warranted in refusing settlement on the ground that the chairs did not conform to the oral warranty.

   *b*—That, assuming that such warranty existed, the vendee might, independently of the provision referred to, have refused to accept the chairs if they did not conform to the warranty, or he might, for any error discovered at once in the mechanical construction, arising through errors in measurement, or negligence on the part of the company to make the chairs conform with the plans and specifications, retain double the cost of the chairs thus improperly constructed, or he might accept the chairs as they were, and sue and recover upon the

warranty, if any existed; but that the terms of the contract were not sufficiently binding upon the company to justify the vendee in confiscating the chairs to his use, and that a verdict should have been directed in favor of the company.

Error to Ingham. (Person, J.) Argued October 13, 1893. Decided January 26, 1894.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinions.

*Cahill & Ostrander*, for appellant.

*M. V. & R. A. Montgomery*, for plaintiff, contended:

1. The contract contains no provision authorizing the vendor to retake possession of the chairs, but simply reserves the title. Under it the vendor had the right to exact payment according to its terms, and reclaim the property upon default of the vendee after demand made after such default, and the vendee had the right to the possession of the chairs until such default; citing *Wiggins v. Snow*, 89 Mich. 476.

2. There was no specific time fixed in the contract for the payment of the purchase price. By express stipulation it was to be paid "by bankable note, due within 90 days from completion of contract." The plaintiff had the right to insist upon performance of the contract in all its material conditions before defendant had the right to demand the note.

GRANT, J. October 2, 1890, plaintiff and defendant entered into a contract by which defendant agreed to furnish the chairs to seat plaintiff's opera house for $1,500. The price agreed upon was to be paid by a bankable note, due in 90 days from completion of contract. It was provided that if defendant, through negligence or error, made and shipped any chair not in conformity with the plans and specifications, plaintiff "might retain in settlement, from the amount agreed to be paid, double the cost of any chairs so wrongly made or mechanically constructed, until such mistake should be made good;" but no such mistake or error should, however, affect or delay settlement further than was stipulated as above stated. The title was to

remain in defendant until the purchase price was paid. The chairs were set up and ready for use December 18, 1890, and were in plaintiff's possession and use till this suit was instituted. Defendant claimed that it had furnished the chairs according to the terms of the contract. Plaintiff claimed that it had not, and refused to settle as provided in the contract, or to give his note, or to pay any part of the purchase price. He pointed out certain defects, which defendant claims it remedied. He declined to point out any other defects, claiming that he was not familiar with the proper construction of such chairs, and should rely upon the judgment of his architect. October 26, 1891, defendant, through its attorneys, wrote a letter to plaintiff asking him to point out specifically the defects in the chairs, so that defendant might remedy them if it chose to do so, and stating that it would remedy any defects due to any neglect on its part in furnishing or putting the chairs in. To this letter plaintiff made no reply. Soon after, defendant threatened to take the chairs back, whereupon plaintiff filed a bill in equity, and obtained an injunction restraining defendant from taking the chairs or bringing an action of replevin. This injunction was speedily dissolved. Defendant again demanded the chairs, and plaintiff unlocked the doors of his opera house, and put defendant in possession thereof, knowing that it would proceed immediately to remove the chairs. The removal was at once commenced. In 15 or 20 minutes afterwards the sheriff appeared with a writ of replevin issued at the instance of the plaintiff, and replevied them. Plaintiff's testimony upon this point is as follows:

"I recollect the time these parties came here, on the date this writ of replevin was issued. Judge Cahill and Mr. Perigrine came together, and met me in front of the opera house between 8 and 9 o'clock in the morning. Judge Cahill said he had come to demand the chairs. I said to him that I supposed that he had had a talk with

you [Montgomery], but that I would like to see you a minute before making any reply. I had learned from my attorney that he had had a conversation with Judge Cahill before that time in relation to yielding possession of these chairs. Judge Cahill said he would not wait, and I simply said, 'Well, you probably know your business, and I want to say to you, as I have always said, that the doors shall be opened;' and I turned and stepped into the store, and told the janitor to open up the front doors of the opera house, and the parties went in. I did not go up with them, but went up 20 or 30 minutes afterwards. They were taking the chairs down. I think Mr. Perigrine was in charge. I said, 'You claim you are in possession of the chairs?' and he said he did. He said they were there to take the chairs out. I said to him there was no need of tearing them loose from the floor; I intended to replevy them. I should not only replevy the chairs, but, if he did not quit tearing them loose and injuring the floor, I should have him arrested for trespass. I went to see Judge Cahill about it, and said: 'I suppose, under the arrangement with Mr. Montgomery, you know we are going to replevy these chairs. Why not leave them where they are?'"

The agent for the defendant testified that when Mr. Cahill told plaintiff that they had come to take the chairs, and asked if he would let them in, plaintiff replied, "You can go in," called Mr. Sanborn, who had the keys, and said, "You get the keys and let them in," which Mr. Sanborn did. After this testimony was given, the following colloquy took place between the counsel for the respective parties:

"*By Mr. Montgomery:* I would like to know if defendant denies possession of the property at the time the replevin writ was served.

"*By Mr. Cahill:* No, we claim to have been in possession, and to have been put in possession by the plaintiff, and we claim that under no circumstances could the plaintiff so put us in possession for the purpose of laying a foundation for the replevin suit; that, after having put us in possession, it was necessary for the plaintiff to make a demand of us, in any event, before this suit could be maintained.

"*Mr. Montgomery:* I think both propositions are true. We had no right to put them in possession of this property to lay a foundation to bring suit, and in such a case a demand would be necessary; but we had a right to leave the property, and say to them, 'If you take it, you do so at your peril.' We claim a wrongful taking, and claim a demand."

At the close of the testimony the record contains the following:

"The following statement was made by defendant's counsel, by way of admission:

"*Mr. Cahill:* In the opera house one night, Mr. Montgomery said to me, in the presence of Mr. Baird, 'Now, if you ever want these chairs, you don't need to replevy them; you can come to me, and I will open the doors for you.

"*Mr. Montgomery:* Is that all that was said that evening?

"*Mr. Cahill:* That is all that I recollect.

"*Mr. Montgomery:* Didn't I say that we claimed the right to them, and you could take them at your peril?

"*Mr. Cahill:* Afterwards, in my office, Mr. Montgomery stated to me, 'We will never let you have these chairs; we don't intend to.' I replied, 'I understood you to say, if we wanted these chairs, we could have them without replevying them.' He says, 'We will open the opera house for you, but we propose, in case you take them out, to replevy them.' I said, 'I don't think you can do that.' He said he thought he could, and there it dropped."

The court left all the issues in the case to the jury, who rendered a verdict for the plaintiff.

1. The possession of the defendant in a replevin suit must be tortious at the time of the issuance of the writ, in order to maintain the action. How can possession be tortious when the defendant is in possession by permission of the plaintiff? Clearly, the defendant company was entitled to retake this property if it had performed its contract, for the title to the property remained in it until paid for, and demand alone was necessary to perfect its right to possession and to maintain replevin. Claiming

that it had so performed it, it made demand for the purpose of replevying the property. Instead of refusing possession, plaintiff unlocked the doors of his opera house, and put defendant in possession of the property. His counsel conceded upon the argument that the effect of plaintiff's conduct was to deprive defendant of a right of action by replevin. Conclusively, therefore, its possession was not, and could not be, tortious. Possession must be either rightful or wrongful. It cannot be both, nor can it be either, under the same facts, at the will of either party. The possessor of personal property cannot, upon demand, invite the demander into his house or other building, point out the property to him, and say: "There it is. You can take it, but if you do you take it at your peril. I shall replevy it back." The demander in such case may lawfully take possession of the property. Nor can the former possessor put him in the wrong by immediately demanding possession back. The law does not permit such a game of shuttlecock. The conversation between the attorneys for the respective parties in the opera house does not aid the plaintiff. No agreement or arrangement was thereby entered into between them. The conversation was entirely ignored by the defendant, for it proceeded to make a demand, in order to take the property by due process of law. Defendant claimed and demanded possession under the terms of its contract. Plaintiff perfectly understood this, and surrendered possession. He thereby abandoned all forms of remedy against defendant except the right to sue it for breach of contract, in which suit he would recover such damages as he could show he had sustained, provided that he proved the breach.

2. The contract, with the plans and specifications, which were made a part of it, covered the full description and character of the chairs to be furnished. All prior negotiations and representations, therefore, became merged in it.

Evidence of a parol warranty and a breach of it was incompetent. The rights of the parties depend upon the written contract, and must be controlled by its terms.

3. The contract did not give plaintiff the right to withhold settlement and the execution of his note for a violation of any warranty, but only gave him the right to deduct twice the price of any chair which was wrongly made, or not mechanically constructed in conformity with the plans and specifications. The result of the plaintiff's contention and the charge of the court would be the destruction of the defendant's security, provided the plaintiff could succeed in convincing a jury that the defendant had in any particular failed to make the chairs in accordance with the contract. We do not think this a fair construction to be placed upon such contracts. The vendor retained title in itself for the purpose of securing the payment of the purchase price. Such contracts are valid, and, upon demand, the vendor is entitled to retake the property. If the property conveyed is not in accordance with the contract, the vendee cannot, at his option, retain the title, and thus deprive the vendor of his security The right of the vendor to retake his property upon demand is not dependent upon the verdict of a jury, or the finding of a court, that he did not furnish the property as specified. The law does not give a vendee such an advantage. Otherwise, an irresponsible vendee might, by interposing such a claim, defeat the sole purpose of such provisions. Upon failure to settle or pay as agreed, the vendor is entitled to a return of the property. If the vendee has suffered damage by the failure on the part of the vendor, he has a remedy by action for breach of contract. A. sells to B. a horse with warranty as to soundness, retaining the title till the purchase price is paid. B., claiming the horse is not sound, refuses payment. A. makes demand, and, upon refusal to deliver possession, brings replevin. B. defends on the ground of

a violation of the warranty, and claims the right to retain the horse for that reason. If his defense avails, it must be because the title has passed to him on account of the violation of the contract of warranty Such a rule is not supported by authority or reason.

4. After the chairs were furnished and in place, and defendant claimed that they were in accordance with the contract, it demanded a settlement. This the plaintiff refused, and, when asked to point out in what particular any of the chairs did not come up to the contract, he refused to do so. The defendant was entitled to know in what respect plaintiff claimed defects, and it had the right to remedy them if it desired to. It was the legal duty of plaintiff to point out these defects. Having failed to do this, he cannot rely upon them in a replevin suit to defeat the right of defendant to retake the property under the express terms of the contract.

The court should have directed a verdict for defendant.

Judgment reversed, and new trial ordered.

MONTGOMERY, J The plaintiff purchased of the defendant assembly chairs for his opera house under a written contract. The chairs were described in the contract by the color of the wood, color of the castings, etc., but it contained no further specification as to quality. The defendant frequently sought to have a settlement with the plaintiff, and, failing in this, took possession of the chairs by virtue of a provision of the contract that the title to the seating, or any portion thereof, should not pass to the plaintiff, but should remain in the defendant; until full payment in cash had been made. It was admitted that the payment had not been made, but it was contended that there was a warranty as to quality which had been broken, and that by virtue of a provision of the contract, hereinafter quoted, the plaintiff had the right to retain

possession of the chairs until the warranty was made good. The warranty was no part of the written agreement between the parties, but depended upon oral testimony. The written contract contained this provision:

"It is further mutually understood and agreed that the seating plans hereinbefore mentioned, when approved by second party, shall be considered a part of this contract, and said first party shall not be held accountable or suffer loss through any errors in measurement of house; but if said first party shall, through negligence or error, make and ship any chair not in conformity with said plans and specifications, then said second party may retain in settlement, from the amount agreed to be paid, double the cost of any chairs so wrongly made or mechanically constructed, until such mistake shall be made good, when said sum so retained shall be paid to first party. Such mistake or error shall not, however, affect or delay settlement in accordance with this contract further than is herein stipulated."

This provision should not, in our judgment, have been construed as warranting the plaintiff in refusing settlement for the chairs on the ground that they did not conform with a warranty not contained in the written agreement. All that was contemplated by the provision was to guard against errors in measurement, or negligence in shipping a chair which could not be placed in the opera house in conformity with the plans and specifications,—such an error as would be apparent at once upon the attempted performance of the contract by the furniture company. This is evident from the fact that it was agreed that settlement should be made by note due in 90 days. It is clear that it was not intended that defects afterwards ascertained by putting the chairs to use should be corrected by retaining, in settlement, double the cost of the chair.

If it be assumed that there was a warranty in addition to the specifications, the plaintiff had three remedies: He might, independently of the provision quoted, have refused

·to accept the chairs if they did not correspond with the terms of the warranty; he might, for any error discovered at once in the mechanical construction, arising through errors in measurement, or negligence on the part of the furniture company to make the chairs conform with the plans and specifications, retain double the cost of the chairs thus imperfectly constructed; or he might accept the chairs as they were, and sue and recover upon the warranty, if any existed. But he has not taken this course. He has refused settlement altogether, has retained the chairs, and has manifested no purpose to pay for them. The terms of the contract are not sufficiently binding upon the company to justify the plaintiff in confiscating the chairs to his use. The circuit judge should have directed a verdict for the defendant.

I concur with the Chief Justice upon the point discussed by him.

LONG, J. I concur with Mr. Justice MONTGOMERY in his conclusions upon the points discussed.

I am not satisfied that replevin can be maintained under the facts stated by Mr. Justice GRANT, and for that reason, also, the verdict should have been directed for defendant.

McGRATH, C. J. I do not agree with Mr. Justice GRANT that the testimony in this case shows that plaintiff, before the replevin suit was brought, had surrendered possession of the chairs in controversy to defendant, or had voluntarily put defendant in possession of them. The controversy respecting the chairs had been going on for a year or more, and other litigation had been had upon the same subject. The contract was dated October 2, 1890. The chairs had been furnished prior to March, 1891. The claimed surrender of the chairs to defendant occurred

February 3, 1892. The parties and their attorneys had had frequent interviews. The opera-house season was on. Defendant had threatened to take possession of the chairs, and plaintiff had denied its right to so do. In the last of these interviews, Mr. Montgomery, plaintiff's attorney, said to Judge Cahill, who was the attorney for defendant, and who went with Mr. Perigrine to the opera house on the morning in question: " We will never let you have these chairs; we don't intend to." Judge Cahill replied: " I understood you to say, if we wanted these chairs, we could have them without replevying them." Mr. Montgomery responded: " We will open the opera house for you, but we propose, in case you take them out, to replevy them." It was this conversation to which plaintiff referred when Judge Cahill and Mr. Perigrine came to take the chairs. The court very properly submitted this very question to the jury, with the following instructions:

" It is claimed on the part of the defendant that plaintiff substantially delivered the goods to it, of his own free will and accord. It is claimed on the part of plaintiff that he did not deliver the chairs to defendant. It is a question for you to determine, because it is the law that if, just prior to bringing this suit, of his own free will and volition, he delivered these chairs over to the company, he cannot maintain the suit. If it was his intention to have the company go and get the chairs, and let it take them as a matter of right on its part, then he could not maintain this action. If, on the other hand, it amounted substantially to this: that he said, 'There is the opera-house door open, but you must not take these chairs,' and forbid it to take them, and it appeared properly so understood,— then it is not material whether a demand was made or not. What you want to determine is what the intention of plaintiff was, as manifested by all the circumstances in the case."

The court was clearly right in this instruction. The jury were entitled to take into consideration the understanding of the parties, from all the conversations, and the circum-

stances. They had the right to infer that Judge Cahill fully understood the position which plaintiff took; that plaintiff denied defendant's right to take the chairs, and intended to replevy them if defendant took possession. Defendant was not misled. It was informed, in effect, that an opportunity to take without a breaking would be afforded, but if it undertook to avail itself of the opportunity, and take the chairs, suit would be instituted to recover the possession. No such consent to the taking could be inferred from such conduct as would deprive defendant of its right to bring an action of replevin.

I concur with my Brother MONTGOMERY on the other points in the case.

HOOKER, J., concurred in the result.